JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CIV 6362

-----------------------------------------------------------X

Kelley Voelker,

                                Plaintiff,

                v.

Deutsche Bank AG,

                                Defendant.

-----------------------------------------------------------X

**COMPLAINT**
**JURY TRIAL DEMANDED**

RECEIVED
SEP 12 2011
U.S.D.C. S.D.N.Y.
CASHIERS

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kelley Voelker ("Plaintiff" or "Ms. Voelker") by and through her undersigned counsel, Thompson Wigdor LLP, as and for her Complaint in this action against Defendant Deutsche Bank AG ("Deutsche Bank," the "Company" or "Defendant"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This action seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices, including unlawful discrimination and retaliation against Plaintiff in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), New York Labor Law §§ 190 *et seq.*, the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.* ("State HRL"), the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq.* ("City HRL"), as well as the Company's retaliation and unlawful interference with Plaintiff's exercise of her rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA").

2.      Plaintiff has encountered a "glass ceiling" or a barrier to equal opportunity advancement in which she has been denied promotions and compensation commensurate with male employees. Furthermore, Plaintiff was retaliated against and ultimately "mommy-tracked" for her decision to take maternity leave, and eventually the Company attempted to demote her from her position before receiving a demand letter from Plaintiff's counsel.  It is not surprising that such discriminatory treatment is permitted when the Company tolerates managers to use terms including "cock," "cunt," and "suck my dick," as well as allowing supervisors to entertain clients at strip clubs and make open derogatory remarks about pregnancy.

3.      In fact, the EEOC has found probable cause existed in a prior gender discrimination cases against the Company.  *See* Jennifer McCandless, *Deutsche Bank Accused of Gender Discrimination*, FINANCIAL NEWS, 25 Aug. 2006, *available at* http://www.efinancialnews.com/story/2006-08-25/deutsche-bank-accused-of-gender-discrimination.  Unfortunately, circumstances remain unchanged at the Company, and the reasons for the persistent gender and pregnancy discrimantion at Deutsche Bank are readily apparent.  Despite the fact that Deutsche Bank USA has prominently displayed a woman and African American male on the front page of its website, *see* http://www.db.com/usa/, all seven of the Deutsche Bank Management Board members are white males, and all twelve of the Company's Group Executive Committee members are also white men.  *See* http://www.db.com/en/content/company/management_ board.htm; http://www.db.com/en/content/company/group_executive_committee.htm. This fosters an atmosphere where it seems appropriate to derail the careers of hard-

working mothers like Ms. Voelker while promoting the chauvinist ideals championed by Deutsche Bank for years.

4.      Plaintiff has filed this lawsuit to seek redress for Defendant's systemic discrimination against her in the workplace and to ensure that women are treated equally with respect to the terms and conditions of their employment.  Specifically, after thirteen years of dedicated service to Deutsche Bank, the Company has refused to promote Plaintiff to Director for years, despite her strong qualifications, especially in comparison to her male colleagues that have received promotions over Ms. Voelker.  Plaintiff has encountered discriminatory conduct, including: (a) failure to promote above a certain level by denying a promotion; (b) payment reductions, which were far more than her male peers received; and/or (c) retaliation for her brief maternity leave, which culminated in Defendant's attempted removal of Plaintiff from the hedge fund team in order to place her into a new position with no career path or visibility.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the Plaintiffs' claims under the Equal Pay Act and FMLA pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.  This Court has supplemental subject matter jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

7.      Plaintiff has filed a charge of discrimination, on behalf of herself and others, with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII, 42 U.S.C. §§ 2000e *et seq* and the Pregnancy Discrimination Act. The charge arises out of the same facts alleged herein.

8.      When the EEOC completes its investigation of the charges and issues Plaintiff's notice of right to sue, Plaintiff will seek leave to amend this Complaint to add claims that Defendants violated Title VII and the Pregnancy Discrimination Act.

9.      Prior to the commencement of this action, a copy of this Complaint was served both on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

10.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

11.     Plaintiff Kelley Voelker is a female employee of Deutsche Bank who currently resides in New York, New York.  After approximately thirteen years of loyal service to Deutsche Bank, Ms. Voelker, is still currently a Vice President ("VP") in the Company's New York City office.  She is a citizen of the United States and at all relevant times met the definition of Deutsche Bank "employee" and/or "eligible employee" under all applicable statutes.

12.     Defendant Deutsche Bank is a Delaware limited liability company with a principal place of business at 60 Wall Street, New York, New York.  At all relevant times

Defendant Deutsche Bank met the definition of "employer" and/or a "covered employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

**Deutsche Bank Hires Ms. Voelker**

13.     Ms. Voelker began her employment with Deutsche Bank's securities lending desk as a Vice President ("VP") on November 3, 1998, focusing on the international markets.[1]

14.     Already in her early thirties, Ms. Voelker had an extensive and diverse financial markets' background prior to joining Deutsche Bank, with eight years in fixed income sales and two years in international agency lending.

15.     Within her first few years with the Company, Ms. Voelker's supervisor, Jim Conti, the head of New York securities lending, recommended her for a promotion to director twice.

16.     Mr. Conti also consistently gave Ms. Voelker high marks on her performance reviews, often at the "Far Exceeds Expectations" level, the highest score on the Company's reviews.  In Ms. Voelker's performance nomination report, Mr. Conti noted that "Kelley leads by example" and that her "experience, diverse background, leadership skills and macro points of view make her a noteworthy candidate for promotion to Director."

17.     Each time Mr. Conti put Ms. Voelker up for director, however, his attempt was rebuffed by Paul Busby, the regional manager out of the Tokyo branch.

---

[1]     Ms. Voelker's first title with the Company was Assistant Vice President, but after reorganization occurred, the "Assistant" tag dropped from all corresponding employees and her title changed to "Vice President."  Therefore, although her title changed once near the beginning of her employment with Deutsche Bank, this was not due to a promotion or change in job duties.

**Hiring and Promotions at Deutsche Bank**

18.     Between 2002 and 2010, Deutsche Bank North America hired a number of VPs and directors that have worked closely with Ms. Voelker throughout her tenure.

19.     The Company hired Craig Kolb and Mihir Shah as VPs around 2002 and 2006, respectively.  Both Mr. Kolb and Mr. Shah are males younger than Ms. Voelker and neither had experience that varied significantly from Ms. Voelker when the Company hired them.  Deutsche Bank promoted Mr. Kolb to director in 2007 and followed suit with Mr. Shah, promoting him to director in 2009.

20.     In March 2006, Matt Roux was hired as a director on Ms. Voelker's team, and when Mr. Roux transferred groups in 2007, Deutsche Bank sought an external replacement, hiring Anthony Demonte as a director on the hedge fund team.

21.     Deutsche Bank made another external hire on the same experience level as Ms. Voelker when it hired Mike Schrager as a director for international client coverage.

22.     In 2009, the Company hired Matt Beneventi as a VP on the hedge fund team.

23.     The following year, the Company promoted Tom Dunster, one of Ms. Voelker's peers in experience and seniority, to a director position in international hedge fund coverage.

24.     Conversely, Janet Cutrone, an Associate at Deutsche Bank who had been with the Company for nearly ten years, was a mother with two children.  In order to spend more time with her young children, Ms. Cutrone asked her supervisors late mid-2008 if she could move to a four-day work schedule.  Despite her notorious reputation as

a hard worker and top performer, she was terminated shortly thereafter in December 2008.

**Ms. Voelker's Experience at Deutsche Bank Prior to Her 2009 Maternity Leave**

25.     For starters, the atmosphere on the desk and at the Company in general was hostile and degrading towards women.

26.     One of Ms. Voelker's managers frequently uses the terms "cock" and "cunt," as well as the term "suck my dick" on the desk.

27.     That same supervisor was also aware that at least one of the male directors took clients to strip clubs to ensure future business and curry favor with large accounts.

28.     These happenings are mere examples of the behavior on the desk that has become commonplace.

29.     When Ms. Voelker was about to go on maternity leave in 2003 with her first child, J.P. Musicco, the head of Deutsche Bank North America securities lending, expressed his doubts that Ms. Voelker would return to the Company following leave. Ms. Voelker's supervisors never took her seriously because she was a woman starting a family, and this was seen as a huge negative within the Company.

30.     With regard to her specific status within the Company, Ms. Voelker deserved a promotion to director beginning around 2001, but began to more aggressively vocalize her desire to achieve director status in 2007, given that she had yet to receive a single promotion during her tenure at Deutsche Bank.

31.     To demonstrate her credentials and unmatched work ethic, Ms. Voelker began covering the fully paid lending product for the hedge fund team in addition to the duties she already performed.

32.     Additionally, Mr. Busby suggested that Ms. Voelker run the intern recruiting effort, a difficult task when added to the rest of her responsibilities, even though Mr. Busby would not invite Ms. Voelker to the initial meetings where intern hiring decisions were made.[2]

33.     Ms. Voelker was highly successful in these roles and consistently scored high marks on her performance reviews, including in the category of "leading others."

34.     In 2001, Mr. DeLuise praised Ms. Voelker for "rais[ing] the level of performance of the NY team," and added that her "level of experience and academic achievements make her an invaluable member" of the group.

35.     In 2005, Ed Connelly, one of Ms. Voelker's supervisors, noted that she "had an excellent year," and that she "makes good business decisions and never puts the firm at any unnecessary risk."

36.     In 2006, Mr. Connelly added that Ms. Voelker "has become the voice of the Demand Team."

37.     In subsequent performance reviews, Mr. Busby continued the trend and gave Ms. Voelker high marks in most categories, but did so in a condescending and contradictory manner, noting that she should be "more vocal" on the desk despite her previous commendations.

---

[2]     Some of the summer interns that Ms. Voelker mentored over the years were subsequently hired by Deutsche Bank and now share the same title of VP.  Despite her years of seniority and experience, she shares the same title as those she trained years ago.

**Ms. Voelker's Future With Deutsche Bank Becomes Tenuous Following Maternity Leave In 2009**

38.     When Ms. Voelker announced her need to go on maternity leave beginning in late 2009, her exemplary performance was further ignored and her male colleagues ensured her alienation through their actions on and around the trading desk.

39.     At an options meeting in the fall of 2009, Ms. Voelker questioned a decision made by one of Ms. Voelker's supervisors.  In Ms. Voelker's presence, Mr. Busby remarked "I'd watch your step – she's pregnant."  In response, Ms. Voelker's supervisor replied "No need to tell me.  I've got one at home," referring to his pregnant wife.

40.     Around the same time, Mr. Busby callously asked Ms. Voelker if "given your advanced age, does the doctor think you will deliver early?"

41.     Additionally, because Ms. Voelker occupies a seat at the far end of the hedge fund trading desk, she is effectively cut out of the loop on many internal communications.

42.     Furthermore, when Ms. Voelker was a few months pregnant, Mr. Busby requested that she resurrect a convertible bond spreadsheet project that had been commenced a few years earlier but, because of the complexity and difficulty of the project, had never been completed.

43.     Ms. Voelker accepted the challenge and successfully completed the project which she planned to implement to win balances from convertible hedge funds.

44.     However, despite her tireless efforts in successfully completing this intricate project, Mr. Busby handed the convertible bond implementation over to Mr.

Beneventi upon his hiring. This was a discriminatory slap in the face to Ms. Voelker, and another example of how devalued she was in comparison to the males on her desk.

45.     When Ms. Voelker eventually went on maternity leave in December 2009, Mr. Beneventi covered her accounts, including her more active arbitrage accounts.

46.     Upon her return from leave in May 2010, Ms. Voelker received a chilling welcome. Despite her desire to transition back into the hedge fund team, Mr. Busby immediately attempted to persuade Ms. Voelker to take on a more "flexible" reduced role.

47.     These sentiments were communicated to Ms. Voelker by various members of Deutsche Bank management. Despite her continued and open desire to receive her long-overdue promotion to director, Deutsche Bank began implementation of a scheme to phase Ms. Voelker out of her position.

48.     First, immediately upon her return from leave, one of Ms. Voelker's supervisors attempted to persuade Ms. Voelker to voluntarily take on a reduced role. The supervisor couched Ms. Voelker's potential new role as having a "flexible" schedule that would allow her to spend more time at home, but Ms. Voelker voiced her strong objections to such an idea.

49.     Ms. Voelker explained that she had no interest in a reduced schedule and that she did not want to make any rash decisions so soon after her return from maternity leave.

50.     Instead, Ms. Voelker reiterated her strong desire to graduate to a director position with Deutsche Bank.

51.     In its next act of blatant discrimination against Ms. Voelker, and following the numerous aforementioned promotions and external hiring of equally-qualified male candidates, the Company promoted Mr. Beneventi to director rather than considering Ms. Voelker for the position.

52.     Mr. Beneventi continued to cover Ms. Voelker's arbitrage accounts, thereby greatly reducing her ability to attain high-revenue figures on the desk.

53.     Although Mr. Busby had assured Ms. Voelker that he would distribute the firm accounts equitably, his promise never came to fruition.  Instead, after Ms. Voelker consistently asked for new accounts to cover, but she was only given a number of "start up" lower profile hedge funds.

54.     Ms. Voelker also received a greatly reduced bonus in February 2011, nearly 30% less than her bonus compensation the previous year.  While Ms. Voelker recognizes that other Deutsche Bank employees with similar roles also received reduced compensation, her compensation reduction was much greater than that of her male colleagues.

55.     In its next act aimed at phasing Ms. Voelker out of her role with the Company, Deutsche Bank attempted to remove Ms. Voelker from the hedge fund team and reduce her duties to a vague and undefined marketing role.

56.     This position has no clear career trajectory and absolutely zero visibility, making it virtually impossible for Ms. Voelker to achieve the director position she so greatly desires.

57.     In fact, the new position is so vague, that when Ms. Voelker asked John Arnone, the new desk head, who she would be reporting to, he responded: "Who do you want to report to?"

58.     Thus, while Ms. Voelker had been seeking a promotion for years, Deutsche Bank instead sought to demote one of its few women VPs solely because of her gender and recent childbirth.

59.     Ms. Voelker expressed her concerns that the demotion and unfair treatment were due to the fact that she is a woman with children, and these complaints were ignored.  In fact, rather than remedy the unlawful acts, Deutsche Bank retaliated against Ms. Voelker by further denying her a director position after a departing male director left her desk, but the Company chose to place another male employee in the position.

60.     It was only after Ms. Voelker's attorneys sent a letter to Deutsche Bank that the Company retracted the demotion and retroactively claimed that Ms. Voelker had the option to stay in her current position.

61.     Most recently, Mr. Kolb, a director on Ms. Voelker's desk, left the Company.  Mr. Kolb and Ms. Voelker covered each others accounts when one was off the desk, giving Ms. Voelker intimate familiarity with Mr. Kolb's accounts.

62.     Despite the fact that Ms. Voelker was the natural fit to assume Mr. Kolb's director position on the desk and cover these shared accounts, Deutsche Bank instead moved Mr. Schrager from the international desk to take Mr. Kolb's position.  Deutsche Bank did not even have the decency to let Ms. Voelker know of the change, as she found out from Mr. Schrager himself.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Violation of 29 U.S.C. § 206(d))

63.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

64.     During the period of the Plaintiff's employment, Defendant was subject to the provisions of the Equal Pay Act. 29 U.S.C. § 206 *et seq.*  During Plaintiff's employment, Defendant required Plaintiff to perform the same or substantially the same job position as other male employees, requiring equal skill, effort, and responsibility under similar working conditions at the same establishment and paid Plaintiff, at a rate of pay, including salary and bonus, less than such male employees.  The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than gender and/or pregnancy.

65.     Defendant engaged in policies and practices of employment which willfully, and in the alternative unwillfully, discriminated against Plaintiff on the basis of her gender and/or pregnancy by paying Plaintiff a lesser rate of pay, including salary and bonus, than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

66.     By the actions described above, among others, Defendant has violated the Equal Pay Act, 29 U.S.C. §206 *et seq.*

67.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Equal Pay Act, Plaintiff has suffered and

continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

68.     Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Interference with Plaintiff's Rights under the Family Medical Leave Act)

69.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

70.     At all times relevant herein, Ms. Voelker was an "eligible employee" within the meaning of the FMLA.  Similarly, at all times relevant herein, Deutsche Bank was and is a "covered employer" within the meaning of the FMLA.

71.     In 2009, Ms. Voelker became pregnant with her second child and gave notice to Deutsche Bank of her pregnancy and intention to take maternity leave. December 2009, Ms. Voelker went out on an approved leave of absence.  Under Deutsche Bank's FMLA maternity leave policy, Ms. Voelker was entitled to 16 weeks of protected leave.

72.     At no time, however, did Deutsche Bank inform or otherwise provide notice to Ms. Voelker that she would forfeit her right to reinstatement if her leave extended beyond the 12-week statutory leave entitlement under the FMLA.  At the end of 12 weeks, Ms. Voelker was fully capable of returning to work and performing all of the essential functions of her position as of that date.

73.     Deutsche Bank has violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Ms. Voelker's FMLA rights by, inter alia, (i)

approving Ms. Voelker's 16-week leave of absence without informing her that if she failed to return after 12 weeks had expired – which she was fully capable of doing – she would forfeit her right to reinstatement under the FMLA; (ii) failing to reinstate Ms. Voelker to the same position or a position equivalent to the position that she occupied prior to her exercising rights protected by the FMLA because she was not given an equitable distribution of firm accounts, as Mr. Beneventi retained control over all of her high-revenue arbitrage accounts, and the Company attempted to force a reduced work schedule upon her; and/or (iii) attempting to demote Ms. Voelker before her attorneys contacted the Company, a decision which was motivated, either in whole or in part, by Ms. Voelker's exercise of her rights protected by the FMLA.

74.     As a direct and proximate result of Deutsche Bank's unlawful conduct in violation of the FMLA, Ms. Voelker has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

75.     Deutsche Bank's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Ms. Voelker is entitled to an award of liquidated damages.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Retaliation in Violation of the Family Medical Leave Act)

76.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

77.     At all times relevant herein, Ms. Voelker was an "eligible employee" within the meaning of the FMLA.  Similarly, at all times relevant herein, Deutsche Bank was and is a "covered employer" within the meaning of the FMLA.

78.     In 2009, Ms. Voelker became pregnant with her second child and gave notice to Deutsche Bank of her pregnancy and intention to take maternity leave. December 2009, Ms. Voelker went out on an approved leave of absence.  Under Deutsche Bank's FMLA maternity leave policy, Ms. Voelker was entitled to 16 weeks of protected leave.

79.     Ms. Voelker has suffered the following adverse employment actions because she exercised rights protected by the FMLA:  (i) Deutsche Bank's failure to reinstate Ms. Voelker to the same position or a position equivalent to the position that she occupied prior to her exercising rights protected by the FMLA; and/or (ii) Deutsche Bank's attempted demotion of Ms. Voelker before her attorneys contacted the Company, a decision which was motivated, either in whole or in part, by Ms. Voelker's exercise of her rights protected by the FMLA.

80.     As a direct and proximate result of Deutsche Bank's unlawful and retaliatory conduct in violation of the FMLA, Ms. Voelker has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

81.     Deutsche Bank's unlawful and retaliatory actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Ms. Voelker is entitled to an award of liquidated damages.

### AS AND FOR A FOURTH CAUSE OF ACTION

**(Discrimination in Violation of New York State Human Rights Law)**

82.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

83.     By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the New York State Human Rights Law through a pattern and practice of failing to promote her, by denying Plaintiff the same terms and conditions of employment available to male employees, including but not limited to, denying her opportunities and access to employment related activities and events, and denying her compensation and other benefits equal to that of male employees.

84.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**AS AND FOR A FIFTH CAUSE OF ACTION**

**(Retaliation in Violation of New York State Human Rights Law)**

85.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

86.     Defendant has retaliated against Plaintiff by, inter alia, denying her promotion, paying her lower compensation, and by stripping her of important responsibilities, exposure and other privileges of employment that are extended to male employees, in violation of the New York State Human Rights Law for her decision to take a brief maternity leave and her complaints of unlawful discrimination.

87.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## AS AND FOR A SIXTH CAUSE OF ACTION

### (Discrimination in Violation of New York City Human Rights Law)

88.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

89.     By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of her gender in violation of the New York City Human Rights Law through a pattern and practice of failing to promote her, by denying Plaintiff the same terms and conditions of employment available to male employees, including but not limited to, subjecting her to disparate working conditions, and denying her compensation and other benefits equal to that of male employees.

90.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

91.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of New York City Human Rights Law)

92.     Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93.     Defendant has retaliated against Plaintiff by, inter alia, denying her promotion, paying her lower compensation, and by stripping her of important

responsibilities, exposure and other privileges of employment that are extended to male employees, in violation of the New York City Human Rights Law for her decision to take a brief maternity leave and her complaints of unlawful discrimination.

94.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

95.     Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.     An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.     An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and retaliatory treatment and otherwise unlawful conduct;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages,

including but not limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

     E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

     G.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

     H.     An award of punitive damages in an amount to be determined at trial;

     I.     An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

     J.     Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: September 12, 2011          Respectfully submitted,
New York, New York

**THOMPSON WIGDOR LLP**


By: _____
       Douglas H. Wigdor
       David K. Reid

       85 Fifth Avenue
       New York, NY 10003
       Telephone: (212) 257-6800
       Facsimile: (212) 257-6845
       dwigdor@thompsonwigdor.com
       dreid@thompsonwigdor.com

       *COUNSEL FOR PLAINTIFF*